DARIAN A. STANFORD, OSB No. 994491
darian@slindenelson.com
R. HUNTER BITNER, OSB No. 011146
hunter@slindenelson.com
SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
Telephone: 503-417-7777
Fax: 503-417-4250
    *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KASSIE MERRITT**, individually and behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**YAVONE LLC**, a California limited liability company, **HEALTHY CHOICE LABS, LLC**, a Nevada limited liability company, and **GLOBAL PRO SYSTEM, INC.**, a Nevada corporation,<br><br>　　　　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Violations of Oregon Rev. Stat. § 646 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kassie Merritt ("Merritt") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Yavone LLC ("Yavone"), Healthy Choice Labs, LLC ("HCL"), and Global Pro System, Inc. ("Global Pro System") (collectively, "Defendants") to enjoin their collective practice of deceptively marketing to and billing consumers—without authorization—for certain of their products and to obtain redress for all persons injured by such conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself

**Page 1 of 25 – CLASS ACTION COMPLAINT**

and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conduct by her attorneys.

## NATURE OF THE CASE

1.      Defendants are just a few of many companies vying for the attention and money of consumers seeking weight loss supplements (*i.e.*, pills marketed as having the ability to facilitate weight loss).[1]

2.      In an attempt to market and sell such supplements (commonly referred to as "nutraceuticals"), Defendants have banded together to heavily promote introductory "free trials" through targeted online advertisements, where consumers can supposedly try one bottle of their product for *only* the cost of shipping and handling.

3.      Unfortunately, Defendants don't clearly or conspicuously disclose that once consumers provide Defendants with their payment information (to purportedly pay for the costs of shipping and handling), Defendants enroll them in a recurring monthly club and then place substantial monthly charges on their accounts without disclosing—in any readily recognizable fashion—that these charges will be imposed.

4.      By and through these practices, Defendants have deceived thousands of consumers throughout the United States. In order to redress these deceptive practices, Plaintiff Kassie Merritt, on behalf of herself and a class of similarly situated individuals, brings this suit seeking injunctive and other relief.

## PARTIES

5.      Plaintiff Kassie Merritt is a natural person and citizen of the State of Oregon.

---

[1]      On information and belief, Defendants have created and operate numerous shell companies and alter egos that operate the scheme described herein and share executives, members, employees and owners. Thus when facts are alleged against one Defendant, Plaintiff alleges the same facts against all other Defendants unless specified otherwise.

**Page 2 of 25 – CLASS ACTION COMPLAINT**

6.      Defendant Yavone LLC is a limited liability company incorporated and existing under the laws of the State of California, with its principal place of business located at 2007 Ernest Avenue #B, Redondo Beach, California 90278. Defendant Yavone does business in this District, the State of Oregon, and nationwide.

7.      Defendant Healthy Choice Labs, LLC is a limited liability company incorporated and existing under the laws of the State of Nevada, with its principal place of business located at PO Box 912643, St. George, Utah 84791. Defendant Healthy Choice Labs does business in this District, the State of Oregon, and nationwide.

8.      Defendant Global Pro System, Inc. is a corporation incorporated and existing under the laws of the State of Nevada, with its principal place of business located at 6671 Las Vegas Boulevard South, Building D210, Las Vegas, Nevada 89119. Defendant Global Pro System does business in this District, the State of Oregon, and nationwide.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the action arises in part under the Electronic Funds Transfer Act, which is a federal statute.

10.     The Court has personal jurisdiction over Defendants because they conduct business in this District and the unlawful conduct alleged in the Complaint occurred in and/or was directed to this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff Merritt's claims occurred in this District and Plaintiff Merritt resides in this District.

**Page 3 of 25 – CLASS ACTION COMPLAINT**

## FACTUAL BACKGROUND

### I.    An Overview of Defendants' Deceptive Conduct.

12.    Defendants sell a nutraceutical supplement under the name "Simply Garcinia Cambogia."

13.    Unfortunately, and as described more fully below, Defendants engaged (and continue to engage) in a far-reaching scheme to defraud consumers into purchasing their supplement. That is, Defendants deceptively enroll consumers in a monthly subscription so that Defendants can impose recurring and sometimes endless monthly charges onto their credit card or bank statements.

14.    Defendants primarily accomplish this fraud by using targeted online advertisements to promote "trial offers" so that consumers can supposedly *try* their product "risk free." Unfortunately, Defendants' trials are nothing more than traps designed to induce consumers to provide Defendants with their payment information (to pay for a nominal shipping fee), so that Defendants can later load substantial charges on their accounts without permission. Given the complexity of their scheme, a description of Defendants' business practices follows.

### A.    Defendants and their agents heavily promote Defendants' supplements through targeted online advertisements and affiliate websites.

15.    Consumers are first exposed to Defendants' product through targeted online advertisements and their affiliate websites[2] that are designed to look like consumer reviews, blogs, and articles recommending Defendants' product. However, these websites are actually fabricated advertisements designed to direct consumers to Defendants' website where consumers are strongly encouraged to sign up for an introductory free trial (*i.e.*, to receive a free bottle of one of Defendants' product).

---

[2]    In its simplest form, an "affiliate website" or "affiliate marketer" refers to a party that is paid to bring potential customers to another party's business or website.

**Page 4 of 25 – CLASS ACTION COMPLAINT**

16.     Indeed, and as previewed above, Defendants and/or their affiliates designed numerous review websites that purport to be written by consumers satisfied with Defendant's garcinia cambogia products. Unbeknownst to the readers, though, the reviews are not actually "unbiased" or real reviews of Defendants' product, rather they are merely advertisements designed by one of Defendants' affiliate marketers (or Defendants themselves). As such, the advertisements are built on entirely false and deceptive premises intended to induce consumers to purchase the product believing the reviews to be true.

17.     Notably, the Defendants and their affiliate marketers directly benefit from these advertisements. That is, Defendants pay affiliate marketers fees for each customer that they direct to Defendants' website and who, in turn, purchases their product. The intent and effect of this is obvious: affiliate marketers are incentivized to use any and all methods of deception to drive traffic to Defendants' website, and Defendants are incentivized to facilitate their affiliate partners using those methods to maximize conversions.

**B.     Defendants Use The "The Dr. Oz Effect" To Attract Consumers To Their Websites.**

18.     Another method Defendants use to lure consumers onto their "free trial" websites has been dubbed "The Dr. Oz Effect." Named after the popular daytime television personality "Dr. Oz," the effect refers to the sales boost nutraceuticals receive after Dr. Oz endorses them on his show. Defendants learn of these endorsements and use Dr. Oz's image to promote their own brands of nutraceuticals.

19.     Dr. Oz regularly promotes the purported benefits nutraceuticals on his television show and has effectively become a spokesperson of the nutraceuticals industry. Consumers trust—perhaps wrongly[3]—that the products being promoted by Dr. Oz are legitimate, ostensibly

---

[3]     Dr. Oz's frequent endorsement of nutraceutical products has recently caught the ire of Congress and has led to him being called "a snake oil pitchman." *Dr. Manny: Celebrity turns a good doctor into a snake oil pitchman | Fox News*, www.foxnews.com /health/2014/06/18/dr-manny-senate-panel-exposes-dr-oz-for-what-is-sell-out/ (last visited Aug. 6, 2014). On June 19, 2014, Dr. Oz appeared before the Senate Subcommittee on

**SLINDE NELSON STANFORD**
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

because the affable TV host touts himself as a Harvard-educated physician. Defendants seek to exploit that trust by quickly manufacturing and marketing whatever Dr. Oz shills—as soon as Dr. Oz promotes a product on his show, Defendants plaster Dr. Oz's image and his "endorsements" onto their websites and advertisements and onto the fake reviews discussed above.

20.    Defendants are undoubtedly confident that Dr. Oz's image and apparent endorsement will lend an air of credibility to their websites, and that their products will receive a sales boost from "The Dr. Oz Effect." As NBC reported, "The Dr. Oz Effect" is real: "When [Dr. Oz] feature[s] a product on [his] show it creates what has become known as the 'Dr. Oz Effect' — dramatically boosting sales and driving scam artists to pop up overnight using false and deceptive ads to sell questionable products."[4]

### C.    Consumers are misled into providing Defendants with their payment information and then enrolled in recurring monthly clubs.

21.    Once a consumer was directed to any of Defendants' websites, they were greeted with statements, graphics and claims—including references to The Dr. Oz Show—designed to convince them to sign up for a "free trial" bottle of Defendants' products.

22.    For instance, one such website included the following statements to induce customers into registering for a trial bottle: "HELPS STOP FAT FROM BEING MADE," "SUPPRESSES YOUR APPETITE," and "Burn Fat Quicker and More Efficiently."

---

Consumer Protection, Product Safety and Insurance where he was "scolded by Chairman Claire McCaskill, D-Mo., for claims he made about weight-loss aids on his TV show, 'The Dr. Oz Show.'" *Dr. Oz Scolded at Hearing on Weight Loss Scams - ABC News*, abcnews.go.com/Health/wireStory/dr-oz-scolded-hearing-weight-loss-scams-24177834 (last visited Aug. 6, 2014); *see also Dr. Oz's bad day on Capitol Hill | TheHill*, thehill.com/policy/ healthcare/209611-dr-oz-gets-tough-treatment-on-weight-loss-claims (stating that "The FTC is currently suing a Florida company that claimed its Pure Green Coffee product would help users shed 20 pounds in four weeks. The campaign used footage from Oz's show, where he discussed the alleged benefits of green coffee extract.").

[4]    *The 'Dr. Oz Effect': Senators Scold Mehmet Oz For Diet Scams - NBC News.com*, www.nbcnews.com /health/diet-fitness/dr-oz-effect-senators-scold-mehmet-oz-diet-scams-n133226 (quoting Sen. McCaskill) (last visited Jan. 25, 2015).

**Page 6 of 25 – CLASS ACTION COMPLAINT**

23.     Defendants' websites were also riddled with graphics purportedly showing pictures of consumers who used Simply Garcinia Cambogia. However, the pictures used by Defendants were nothing more than stock photographs of people unrelated to Defendants' product.

24.     Yet, near each of these statements and images were statements strongly encouraging the visitor to try Defendants' product, such as "CLAIM YOUR FREE BOTTLE TODAY!," "RUSH MY ORDER" and that the trial was "Risk Free." Nowhere on this page was an actual price for the given product, nor was there any request that a consumer review or agree to any terms and conditions. Instead, consumers were instructed to provide their name, address, phone, and email address to claim their free bottle.

25.     Following submission of the initial contact information, consumers were directed to a checkout page. The page included representations such as "Final Step" and "Rush My Order," and Defendants represented that the price of the product(s) was "$0.00" with a small charge for shipping and handling (typically less than $5.00). There were no asterisks or other notations next to the total price directing the consumer to review any further terms or otherwise indicate that this wasn't the total price to be charged.

26.     Within the "payment information" form, a consumer was asked to input the type of card, the number, expiration date, and the card's security code. Immediately below the security code form is a large "RUSH MY ORDER" button. Because of this, the entire transaction could be completed without needing to scroll or view any other part of the page.

27.     Within the online marketing industry, the term "above the fold," means that content can be viewed when the webpage loads without the need to scroll. By contrast, the term "below the fold" refers to any content on a website that requires the consumer to scroll down and seek out. Any content that is below the fold, especially when there is no indication above the fold that such content exists, is commonly understood to not be seen by a website viewer.

**Page 7 of 25 – CLASS ACTION COMPLAINT**

28.    Defendants intentionally designed the product checkout pages to place any price disclosure below the fold in an area that a consumer would have no reason to view. Specifically, Defendants may have placed a condensed paragraph of text in very small print below the "price box" in a final effort to discourage any consumer from seeing or reading a price disclosure.

29.    As such, and by intentional design, consumers simply would not have seen (and did not see) any price disclosure for Defendants' product. Thus, consumers submitted credit or debit card information relying on the fact that, as represented to them, they would only be paying shipping and handling (and would not be subsequently charged).

30.    Defendants' lack of proper disclosures intentionally defies every best practices recommendation and FTC guideline. Each year the FTC releases its ".com Disclosures" that provide guidelines and best practices for online advertising and online transactions.[5] The .com Disclosures set forth several rules that are applicable to Defendants' conduct here, and demonstrate how intentionally deceptive their conduct actually is:

- "If a disclosure provides information that contradicts a material claim, the disclosure will not be sufficient to prevent the ad from being deceptive. In that situation, the claim itself must be modified";

- "If a disclosure is not seen or comprehended, it will not change the net impression consumers take from the ad and therefore cannot qualify the claim to avoid a misleading impression";

- "In reviewing their ads, advertisers should adopt the perspective of a reasonable consumer. They also should assume that consumers don't read an entire website or online screen, just as they don't read every word on a printed page. Disclosures should be placed as close as possible to the claim they qualify. Advertisers should

---

[5]    *See Federal Trade Commission, .com Disclosure: How to Make Effective Disclosure in Digital Advertising* (March 2013), available at http://www.ftc.gov/sites/default/files/ attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

**Page 8 of 25 – CLASS ACTION COMPLAINT**

keep in mind that having to scroll increases the risk that consumers will miss a disclosure";

- "In addition, it is important for advertisers to draw attention to the disclosure. Consumers may not be looking for—or expecting to find—disclosures . . . disclosures must be communicated effectively so that consumers are likely to notice and understand them in connection with the representations that the disclosures modify. Simply making the disclosure available somewhere in the ad, where some consumers might find it, does not meet the clear and conspicuous standard";

- "When advertisers are putting disclosures in a place where consumers might have to scroll in order to view them, they should use text or visual cues to encourage consumers to scroll and avoid formats that discourage scrolling . . . An explicit instruction like 'see below for important information on restocking fees' will alert consumers to scroll and look for the information . . . General or vague statements, such as 'details below,' provide no indication about the subject matter or importance of the information that consumers will find and are not adequate cues";

- "The design of some pages might indicate that there is no more information following and, therefore, no need to continue scrolling. If the text ends before the bottom of the screen or readers see an expanse of blank space, they may stop scrolling and miss the disclosure";

- "They will also likely stop scrolling when they see the information and types of links that normally signify the bottom of a webpage, e.g., 'contact us,' 'terms and conditions,' 'privacy policy,' and 'copyright.' In addition, if there is a lot of unrelated information—either words or graphics—separating a claim and a disclosure, even a consumer who is prompted to scroll might miss the disclosure or not relate it to a distant claim they've already read"; and

**Page 9 of 25 – CLASS ACTION COMPLAINT**

- "If scrolling is necessary to view a disclosure, then, ideally, the disclosure should be unavoidable—consumers should not be able to proceed further with a transaction, e.g., click forward, without scrolling through the disclosure. Making a disclosure unavoidable increases the likelihood that consumers will see it."

31.    As made clear when comparing Defendants' conduct with the guidelines set forth by the FTC, it is apparent that Defendants' marketing and sales tactics are intentionally deceptive and meant to prevent consumers from understanding the true terms of purchasing Defendants' product.

32.    Perhaps most tellingly, Defendants also sell their products through non-affiliate driven websites that more appropriately follow the guidelines above and disclose the actual charges at issue, require consumers to check a box to agree to specific price terms, and place the full charge amounts (starting at $48.00 for one bottle) directly next to the offer's language. These websites do not receive affiliate traffic and are difficult, if not impossible, to find through a search engine. As such, they are not Defendants' intended vehicles to actually sell their products because they know they will simply not sell as well as their other sites. Yet, even still, these websites' very existence demonstrates Defendants' knowledge of how to better sell products online.

**D.    Each Defendant's Role in the Scheme.**

33.    The facts above illustrate Defendants' shared goal to deceive consumers into signing up for purported "free trials." To achieve that goal, Defendants have coordinated their efforts, with each providing a different—but necessary—component to the common fraudulent scheme. Indeed, Defendants have created a system where HCL, Yavone, and Global System Pro all work together to profit by defrauding consumers across the country.

**Page 10 of 25 – CLASS ACTION COMPLAINT**

34.    To start, HCL[6] markets and sells products on its website www.healthychoicelabs.com that purportedly help consumers lose weight, including garcinia cambogia pills (under the "HCL Garcinia Cambogia" brand), green coffee bean extract, and raspberry ketones.

35.    HCL also operates dozens of websites on the internet that have been designed (with assistance from Defendants Yavone and Global System Pro) to sell Defendants' Simply Garcinia Cambogia brand of garcinia cambogia extract. Some of the websites include "feelgoodweight.com," "clickslim.com," "simplycambogia.com," and more.[7] All of the websites share common text and pictures, and used the same method to sell Simply Garcinia Cambogia.

36.    Defendant Yavone's role in this scheme is that of the "merchant." As the merchant, Yavone supplies the domain for the collective endeavor's use— www.feelgoodweight.com. In addition, Yavone contracts with affiliates and other agents to market that web address online and to draw consumers to Yavone's webpage.

37.    Once consumers are brought to one of Defendant HCL's webpages —including the page provided by Yavone—and submit their name and address, the consumer is navigated to www.protectedacquisitions.com, which is another website controlled by Defendant HCL. That is, no matter what initial website the consumer first visits (*e.g.*, feelgoodweight.com,

---

[6]    On information and belief, Defendant HCL is the alter ego of Defendant Global System Pro created to carry out its nutraceutical business, and HCL and Global System Pro conduct business out of the same office, with one management team, and the same employees.

[7]    A more comprehensive list of Defendants' websites used in this scheme is cahealthyweightloss.com, datgarciniacambogia.com, health4u3.com, bachelorweightloss.com, cchealthgarciniacambogia.com, goodnutrients4all.com, greencoffeeweightlossnow.com, mycambogiaweightloss.com, simplycambogia.com, vitaminmind.com, livewellchoice.com, shrinkinsize.com, lifetimeofgoodhealth.com, loseitlikemagic.com, newageweightloss.com, readytoburnfat.com, embweightloss.com, bhealthynwell.com. In addition, HCL jointly operates websites that sell Simply Garcinia Cambogia with several non-party companies, including mysimplycambogiadiet.com (operated jointly with DLS Investments LLC), help-lose-weight-now.com (operated jointly with Palmarin Liquidations), cambogiaultra.com (operated jointly with Nutra Euro Marketing LLC), and loseweightwithsupplements.com (operated jointly with SEM Ventures LLC). Plaintiff reserves the right to name additional parties as necessary based on further investigation and discovery.

**Page 11 of 25 – CLASS ACTION COMPLAINT**

**SLINDE NELSON STANFORD**
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

clickslim.com, or simplycambogia.com) Defendants make all consumers complete their transactions on the protectedacquisitions.com website.

38.    To track which "merchant" brought about a particular sale, Defendant HCL created custom, behind-the-scenes computer code that is implemented on the merchants' websites. For instance, for Defendant Yavone, Defendants implemented the following code:

> <input type="hidden" name="MerchantID" value="148" /> <input
> type="hidden" name="MerchantName" value="feelgoodweight -
> Yavone LLC" />

39.    Parsing that code illustrates that Defendants have attributed the "hidden" "MerchantID" of 148 and the "MerchantName" of "feelgoodweight – Yavone LLC" to Defendant Yavone. This same block of code is repeated for every "merchant" that is a part of Defendants' scheme (*i.e.*, the same code exists on clickslim.com and simplycambogia.com but is customized for the merchants behind those websites).

40.    For its part, Defendant Global Pro System recruits and coordinates the efforts of the merchants operating in this scheme. To accomplish this, Defendant Global Pro System has tapped into its principal's, Anthony Powell, "downline." In multi-level marketing schemes, a downline refers to all individuals that have been recruited to sell particular products, each time a merchant "down line" makes a sale, the people above them profit as well. One website dedicated to exposing fraudulent MLM schemes claims that Global Pro System exists only as a "recruiting business" for Anthony Powell and his associates.[8] Defendant Global Pro System has also created a website to specifically communicate via online video with "Anthony Powell's downline only," presumably to communicate about matters including the Simply Garcinia Cambogia scheme.[9]

41.    With each Defendant doing their part, the end result of Defendants' "free trial"

---

[8]    *Anthony Powell - Herbalife Pyramid Scheme Scam*, http://www.herbalifepyramidscheme.com/perpetrators/anthony-powell/ (last visited Aug. 6, 2014).

[9]    *GPSOffice*, http://www.iofficewebcast.com (last visited Aug. 6, 2014).

**Page 12 of 25 – CLASS ACTION COMPLAINT**

scheme is profit. All of the many "free trial" merchants running websites add to Defendants' respective bottom lines—whenever a consumer orders a "free trial," all of the Defendants receive a share of the profits generated through the subsequent unauthorized recurring charges. Accordingly, there is a strong incentive for each Defendant to use whatever means to maximize the number of "free trial" orders.

## II.    Facts Relating To Plaintiff Kassie Merritt.

42.    In or around early May 2014, Plaintiff Kassie Merritt encountered an advertisement for Defendants' Simply Garcinia Cambogia product while browsing around the World Wide Web. Plaintiff clicked on the advertisement and viewed representations substantially similar to those described above concerning the efficacy, availability, and cost of Simply Garcinia Cambogia. Based on those representations, Plaintiff submitted her personal information through Defendants' initial landing page.

43.    Thereafter, Defendants directed Plaintiff to their checkout page. Once there, Plaintiff viewed the representations substantially similar to those described above, including a "price" box that listed $0.00 for Simply Garcinia Cambogia and a charge of less than $5.00 for shipping and handling. Plaintiff did not view any other price terms or agree to any terms and conditions.

44.    Based on the representations made by Defendants on their website regarding the total price of less than $5.00 that would be charged to her debit card, Plaintiff submitted her debit card information and submitted her order.

45.    On May 26, 2014, Defendants debited Plaintiff's bank account in the amount of $79.99.

46.    Plaintiff did not consent or otherwise agree to these charges, and Defendants failed to disclose the existence of these charges to Plaintiff in a clear and conspicuous manner.

**Page 13 of 25 – CLASS ACTION COMPLAINT**

47.     Had Plaintiff known she was going to be automatically charged $79.99 she would not have submitted her debit card information to pay for shipping and handling for Defendants' Simply Garcinia Cambogia product.

## CLASS ALLEGATIONS

48.     **Class Definitions:** Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and a proposed class and subclass defined as follows:

> **Class**: All persons in the United States who (1) submitted payment information for Simply Garcinia Cambogia; and (2) who were charged monies beyond the listed shipping and handling fee.

> **EFTA Subclass**: All persons in the Class who had monies debited from their bank account beyond the listed shipping and handling fee.

The following persons are excluded from the Class and EFTA Subclass: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class and EFTA Subclass; (4) any person who has had their claims fully and finally adjudicated or otherwise released; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) Plaintiff's counsel and Defendants' counsel.

49.     **Numerosity:**   The exact number of the members of the Class and EFTA Subclass is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have deceived and profited from thousands of consumers who fall into the definitions set forth above. Members of the Class and EFTA Subclass can be identified through Defendants' records.

50.     **Commonality and Predominance**: There are many questions of law and fact

**Page 14 of 25 – CLASS ACTION COMPLAINT**

common to the claims of Plaintiff and the Class and EFTA Subclass, and those questions predominate over any questions that may affect individual members of the Class and EFTA Subclass. Common questions for the Class and EFTA Subclass include, but are not limited to the following:

     (a)     Whether Defendants' conduct alleged herein constitutes fraud in the inducement;

     (b)     Whether Defendants' conduct alleged herein constitutes fraud by omission;

     (c)     Whether Defendants' conduct alleged herein constitutes breach of contract;

     (d)     Whether Defendants' conduct alleged herein constitutes a violation of Oregon Revised Statute § 646 *et seq.*; and

     (e)     Whether Defendants' conduct alleged herein constitutes a violation of 15 U.S.C. § 1693e.

51.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class and EFTA Subclass, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions that were made uniformly with Plaintiff and the public.

52.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and EFTA Subclass, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Class and EFTA Subclass, and Defendants have no defenses unique to Plaintiff.

53.     **Policies Generally Applicable to the Class and EFTA Subclass**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and EFTA Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and EFTA Subclass, and making final injunctive relief appropriate with respect to the Class and EFTA Subclass as a whole. Defendants' policies challenged herein apply and affect

**SLINDE NELSON STANFORD**
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

members of the Class and EFTA Subclass uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class and EFTA Subclass as a whole, not on facts or law applicable only to Plaintiff.

54.    **Appropriateness of Injunctive Relief**: Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and EFTA Subclass, thereby making final injunctive relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class and the EFTA Subclass that would establish incompatible standards of conduct for Defendants.

55.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned in discovery.

## FIRST CAUSE OF ACTION

**Oregon Unlawful Trade Practice Act**

**Oregon Revised Statute § 646 *et seq.***

**(On Behalf of Plaintiff and the Class)**

56.    Plaintiff is a "person" as defined by Or. Rev. Stat. § 646.605 (4).

57.    Defendants' Simply Garcinia Cambogia is a "good" as defined by Or. Rev. Stat § 646.605(6) because Simply Garcinia Cambogia is obtained primarily for personal, family, or household purposes.

58.    At all material times, Defendants were engaged in "trade" and "commerce" as defined by Or. Rev. Stat. § 646.605 because they were and continue to be in the business of selling Simply Garcinia Cambogia to persons in the State of Oregon.

59.    In the course of their business, Defendants have engaged "Unlawful" acts as defined in Or. Rev. Stat. § 646.607.

60.    Specifically, Defendants knowingly took advantage of their ignorance or inability

**Page 16 of 25 – CLASS ACTION COMPLAINT**

to understand the language of the agreement which is an unconscionable practice as defined in Or. Rev. Stat. § 646.605(9)(a). As described above, Defendants purposely designed their Simply Garcinia Cambogia websites to omit or hide terms related to the recurring fees beyond the listed shipping and handling fees.

61.    In addition, Defendants engaged in unlawful practices in the course of their business in the following ways:

(a)    Defendants made false or misleading representations of fact concerning the offered price of Simply Garcinia Cambogia by omitting the actual price of the Simply Garcinia Cambogia products in violation of Or. Rev. Stat. § 646.605(s). As described herein, Defendants designed their websites to list only the fees consumers must pay for shipping and handling to receive a trial of their products while omitting references to automatic subsequent charges (typically $79.99);

(b)    Defendants made free offers to consumers without providing clear and conspicuous information to consumers before acceptance of the free offer in violation of Or. Rev. Stat. § 646.644. As described above, Defendants did not disclose that consumers would be enrolled in recurring subscription charges after paying the nominal shipping and handling fee for the Simply Garcinia Cambogia free trial, nor did Defendants obtain consumers' consent for any additional recurring fees; and

(c)    Defendants (1) made automatic renewal or continuous service offers to consumers without presenting the automatic renewal terms in a clear and conspicuous manner or in visual proximity to the request for consent to Defendants' free trial offer; (2) charged consumers' credit or debit card for an automatic renewal service without first obtaining the consumer's

**Page 17 of 25 – CLASS ACTION COMPLAINT**

affirmative consent; and (3) charged consumers for goods sent to consumers under an unauthorized automatic renewal service and obligating consumers to ship and/or bear the cost of shipping such goods back to Defendants in violation of Or. Rev. Stat. § 646.295.

62.    At all relevant times, Defendants acted knowingly or in reckless disregard of the requirements of Or. Rev. Stat. § 646 *et seq.* by charging Plaintiff and members of the Class automatic renewal fees without first disclosing the fees' existence or obtaining authorization from Plaintiff and members of the Class. In addition, Defendants knew the true terms of the agreement and the existence of the automatic renewal charges at the time they entered into transactions with Plaintiff and members of the Class because they created, designed, and operated the websites that sold Defendants' Simply Garcinia Cambogia.

63.    As a result of Defendants' unlawful trade practices, Plaintiff and the members of the Class have suffered an ascertainable loss of money in the amount of the automatic renewal fees (typically $79.99) as a result of Defendants' knowing employment of the unlawful practices as described above.

64.    Plaintiff, on behalf of herself and the Class, seeks an order: (i) permanently enjoining Defendants from engaging in the fraudulent conduct described herein; (ii) compelling Defendants to inform consumers who ordered trial offers that they may have been (or will be) charged additional fees, (iii) requiring Defendants to pay reasonable costs and attorneys' fees; and (iv) further relief to be specified at trial.

## SECOND CAUSE OF ACTION

### Fraud in the Inducement

### (On Behalf of Plaintiff and the Class)

65.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.    As described with particularity herein, Defendants have designed, overseen, and

**SLINDE NELSON STANFORD**
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

disseminated false and misleading advertising promoting their nutraceutical product, Simply Garcinia Cambogia. This conduct includes, but it is not limited to, promoting and advertising Simply Garcinia Cambogia without disclosing the actual characteristics and price of the product, which are material terms of any transaction. Defendants promoted and charged for their nutraceutical product with full knowledge that consumers were acting in reliance on their false statements.

67.    Through a series of advertisements, representations, omissions, and false statements regarding Simply Garcinia Cambogia, Defendants misrepresented and obscured the actual cost and characteristics of their product.

68.    Defendants took concrete and intentional steps to misrepresent the actual price and characteristics of their nutraceutical product if consumers submitted their credit or debit card information to Defendants.

69.    Defendants intentionally designed their product's landing and checkout pages so as to increase the rates of conversion (*i.e.*, sales) by misrepresenting the characteristics of their product and intentionally concealing the actual price to be charged for Simply Garcinia Cambogia.

70.    By committing the acts alleged in this Complaint, Defendants have designed and disseminated untrue and misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase Defendants' nutraceutical product.

71.    The price of the product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a consumer product is materially misleading.

72.    The misrepresentation or omission of the contents of a product is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

73.    Defendants knew of the falsity of the representations they made regarding their

**Page 19 of 25 – CLASS ACTION COMPLAINT**

nutraceutical product they marketed and charged for.

74.    Defendants intended that the deceptive and fraudulent misrepresentations and omissions they made would induce a consumer to rely and act by submitting their confidential contact and payment information.

75.    Defendants charged and collected from Plaintiff and members of the Class monies without clearly and conspicuously stating the actual price and characteristics of their product. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations and omissions of material fact and were ignorant of the falsity of Defendants' misrepresentations when they were made.

76.    In deceiving Plaintiff and the Class by creating, enhancing, and supporting advertising that fails to clearly and conspicuously disclose, and in fact actively misrepresents, the actual price and characteristics of their nutraceutical product, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendants have engaged in fraudulent practices designed to mislead and deceive consumers.

77.    Plaintiff and the Class have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

78.    Plaintiff, on behalf of herself and the Class, seeks an order: (i) permanently enjoining Defendants from engaging in the fraudulent conduct described herein; (ii) compelling Defendants to inform consumers who ordered trial offers that they may have been (or will be) charged additional fees, and (iii) requiring Defendants to pay reasonable costs and attorneys' fees.

<u>**THIRD CAUSE OF ACTION**</u>

**Fraud By Omission**

**(On Behalf of Plaintiff and the Class)**

79.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**Page 20 of 25 – CLASS ACTION COMPLAINT**

80.     Based on Defendants' misrepresentations and omissions, Plaintiff and the Class reasonably expected that Defendants' nutraceutical product would include certain characteristics and could be obtained through a trial offer for only the price of shipping and handling.

81.     At all times, Defendants knew that the price of their nutraceutical product was not clearly and conspicuously disclosed.

82.     Defendants were under a duty to Plaintiff and the Class to disclose the true characteristics and price of Simply Garcinia Cambogia because:

(a)     Defendants were in a superior position to know the true state of facts about the actual price and characteristics of Simply Garcinia Cambogia;

(b)     Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendants were concealing the actual price of Simply Garcinia Cambogia; and

(c)     Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the actual price of Simply Garcinia Cambogia.

83.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class, and the facts that Defendants knew were concealed, are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' nutraceutical product. Had Plaintiff and the Class known the actual price and characteristics of Defendants' nutraceutical product, they would not have submitted their credit or debit card information.

84.     Defendants concealed or failed to disclose the true price and characteristics of the nutraceutical product in order to induce Plaintiff and the Class to act thereon and proffer payment. Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment by paying more money than just a shipping and handling fee.

85.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the

**Page 21 of 25 – CLASS ACTION COMPLAINT**

Class have suffered actual damages in the form of monies paid to purchase Defendants' nutraceutical product.

86.    Plaintiff, on behalf of herself and the Class, seeks an order: (i) permanently enjoining Defendants from engaging in the fraudulent conduct described herein; (ii) compelling Defendants to inform consumers who ordered trial offers that they may have been (or will be) charged additional fees, and (iii) requiring Defendants to pay reasonable costs and attorneys' fees.

<p align="center">**FOURTH CAUSE OF ACTION**</p>

<p align="center">**Breach of Contract**</p>

<p align="center">**(On Behalf of Plaintiff and the Class)**</p>

87.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.    In reliance upon Defendants' misrepresentations and deceptive advertising, Plaintiff and Class members entered into contracts with Defendants to receive a trial offer of their nutraceutical product. A material inducement and term of the contracts was Defendants' representation that Plaintiff and the Class would only need to pay shipping and handling in order to receive the trial offer.

89.    As a result of Defendants' misrepresentations detailed in this Complaint, Plaintiff and the Class were charged fees above and beyond the price of shipping and handling in breach of the consumer retail contract.

90.    Defendants failed to uphold their contractual obligations by charging those additional fees without permission, thereby breaching their contract with Plaintiff and the other members of the Class.

91.    At all times relevant to this action, Defendants acted willfully and with intent to breach contracts entered into with Plaintiff and the Class.

92.    Plaintiff and the Class have fully performed their contractual obligations.

**Page 22 of 25 – CLASS ACTION COMPLAINT**

**SLINDE NELSON STANFORD**
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

93.     Plaintiff and the Class have suffered damages as a direct result of Defendants' unlawful and wrongful practices described herein in the form of monies paid and lost.

94.     As a result, Plaintiff and the Class request that the Court enjoin Defendants from offering trial offers without clearly and conspicuously disclosing fees above and beyond the price of shipping and handling. In addition, Plaintiff and the Class seek an order requiring Defendants to inform consumers who ordered trial offers that they may have been (or will be) charged additional fees.

## FIFTH CAUSE OF ACTION

### Violations of the Electronic Funds Transfer Act

### 15 U.S.C. § 1693e

### (On behalf of Plaintiff and the EFTA Subclass)

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96.     As described above, Defendants initiated the electronic transfers of funds for unauthorized charges from the debit accounts of Plaintiff and the EFTA Subclass without first obtaining written authorization from them or providing them with a copy of any such purported authorization. As such, Defendants have violated 15 U.S.C. § 1693e.

97.     Plaintiff and the members of the EFTA Subclass have suffered damages as a result of Defendants' violations of 15 U.S.C. § 1693e.

98.     Accordingly, under 15 U.S.C. § 1693m, Plaintiff and the members of the EFTA Subclass seek an injunction preventing further violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kassie Merritt, individually and on behalf of the Class and EFTA Subclass, requests that the Court enter an Order providing for the following relief:

SLINDE NELSON STANFORD
111 SW 5th Ave, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

A.      Certify this case as a class action on behalf of the Class and EFTA Subclass defined above, appoint Plaintiff as representative of the Class and EFTA Subclass, and appoint her counsel as Class Counsel;

B.      Declare that Defendants' actions, as set out above, violate 15 U.S.C. § 1693e and Or. Rev. Stat. § 646 *et seq.*, and constitute fraud in the inducement, fraud by omission, and breach of contract;

C.      Award injunctive relief and other relief as is necessary to protect the interests of the Class, including, *inter alia*, an order: (i) prohibiting Defendants from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Defendants to disclose and admit the wrongful and unlawful acts described herein;

D.      Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.      Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

////

////

////

////

////

////

////

////

////

**Page 24 of 25 – CLASS ACTION COMPLAINT**

G.      Award such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: February 16, 2015

**KASSIE MERRITT**, individually and on behalf of all others similarly situated,

SLINDE NELSON STANFORD

/s/ Darian A. Stanford
Darian A. Stanford, OSB No. 994491
darian@slindenelson.com
R. Hunter Bitner, OSB No. 011146
hunter@slindenelson.com

*Attorneys for Plaintiff*

**Page 25 of 25 – CLASS ACTION COMPLAINT**