DARIAN A. STANFORD, OSB No. 994491
darian@slindenelson.com
R. HUNTER BITNER, OSB No. 011146
hunter@slindenelson.com
SLINDE NELSON STANFORD
111 SW Fifth Avenue Suite 1940
Portland, OR 97204
Tel: 503-417-7777
Fax: 503-417-4250

RAFEY S. BALABANIAN (*Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (*Pro Hac Vice*)
brichman@edelson.com
COURTNEY C. BOOTH (*Pro Hac Vice*)
cbooth@edelson.com
EDELSON PC
350 N. LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312-589-6370
Fax: 312-589-6378

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KASSIE MERRITT**, individually and on behalf of all others similarly situated,<br><br>**PLAINTIFF**,<br><br>v.<br><br>**YAVONE LLC**, a California limited liability company, **HEALTHY CHOICE LABS, LLC**, a Nevada limited liability company, and **GLOBAL PRO SYSTEM, INC.**, a Nevada corporation,<br><br>**DEFENDANTS.** | Case No. 6:15-cv-00269-TC<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS GLOBAL PRO SYSTEM, INC.'S AND HEALTHY CHOICE LABS, LLC'S MOTIONS TO DISMISS<br>Request for Oral Argument |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ......................................................................................3

    I.      Defendants Mislead Consumers—Through Targeted Online
           Advertisements—Into Providing Their Payment Information for a
           Supposedly "Free Trial" and then Automatically Enroll Consumers in
           Recurring Monthly Clubs ...................................................................3

    II.     Plaintiff Merritt Relied Upon Defendants' Misrepresentations in Signing
           up for a "Free Trial" of Simply Garcinia Cambogia ...........................5

ARGUMENT ...............................................................................................................6

    I.      Legal Standard .................................................................................6

    II.     Merritt Pleads Sufficient Facts as Required by Rules 8(a) and 9(b), Putting
           all Defendants—Including GPS and HCL—on Notice of the Claims Brought
           Against Them .................................................................................6

          A.    Merritt Pleads Sufficient Facts Under Rule 8(a) .......................7

          B.    Merritt Meets—and Exceeds—the Heightened Pleading Requirements
                Under Rule 9(b) .......................................................................8

    III.    Merritt Alleges Facts Sufficient to State a Claim for Each Count of the
           Complaint .......................................................................................13

          A.    As an Initial Matter, the Court May Not Properly Consider the Document
                HCL Attached to its Motion .....................................................13

               1.    The document cannot be incorporated by reference .....................13

               2.    The Terms and Conditions Agreement does not even stand for the
                      proposition on which Defendants base their arguments ...............15

          B.    Merritt Sufficiently Alleges Her Fraud-Based Claims .............16

               1.    Merritt sufficiently alleges her fraud in the inducement claim ......16

                2.    Merritt sufficiently alleges her fraud by omission claim ..............17

          *3.      Merritt sufficiently alleges her claim for violation of Or. Rev. Stat. § 646 et seq* .................................................................................19

    C.    <u>Merritt Sufficiently Alleges her Breach of Contract Claim</u>......................21

    D.    <u>Merritt Sufficiently Alleges her Electronic Funds Transfer Act Claim</u>..............................................................................................22

**CONCLUSION** .................................................................................................24

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...............................................................................6, 7

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Concha v. London,*
   62 F.3d 1493 (9th Cir. 1995) ........................................................... 11-12

*Keams v. Tempe Technical Institute, Inc.,*
   39 F.3d 222 (9th Cir. 1994) ...................................................................6

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ...............................................................6

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) .................................................................14

*Meade v. Cedarapids, Inc.,*
   164 F.3d 1218 (9th Cir. 1999) ...............................................................18

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 (9th Cir. 1989) .........................................................11, 24

*Rivera v. Peri & Sons Farms, Inc.,*
   735 F.3d 892 (9th Cir. 2013) .................................................................20

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ..................................................................9

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .................................................................14

**UNITED STATES DISTRICT COURT CASES:**

*Altamont Summit Apartments, LLC v. Wolff Properties, LLC,*
   No. Civ. 01-1260, 2002 WL 926264 (D. Or. Feb. 13, 2002)...........................................12

*Blincoe v. Western States Chiropractic College,*
   No. CV 06-998, 2007 WL 2071916 (D. Or. July 14, 2007) ............................................20

*Expedite, Inc. v. Plus, Bags, Cars & Serv., LLC*,
    No. 11-329, 2012 WL 3597427 (D. Or. Aug. 17, 2012) ........................................ 17-18

*Fields v. Wise Media, LLC*,
    No. C 12-05160, 2013 WL 3187414 (N.D. Cal. June 21, 2013) ..........................9, 12, 13

*Holmes v. Bartlett*,
    No. 03-1176-AS, 2004 WL 1379590 (D. Or. Feb. 20, 2004) ......................................6, 12

*In re EasySaver Rewards Litig.*,
    737 F. Supp. 2d 1159 (S.D. Cal. 2010) ...................................................................22, 23

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) .............................................................................8

*McKie v. Sears Protection Co.*,
    No. CV 10-1531, 2011 WL 1587112 (D. Or. Feb. 22, 2011)..........................................20

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ........................................................................23

*Original Talk Radio Network, Inc. v. Alioto*,
    No. 13-cv-00759, 2013 WL 4084247 (D. Or. Aug. 13, 2013) ..................................16, 17

*Perdue v. Rodney Corp.*,
    No. 13cv2712, 2014 WL 3726700 (S.D. Cal. July 25, 2014)....................................14, 15

*RB Rubber Prods., Inc. v. ECORE Intern., Inc.*,
    No. 11-cv-319, 2012 WL 860416 (D. Or. Mar. 13, 2012).................................................14

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
    749 F. Supp. 1042 (D. Or. 1990) ....................................................................................10

*Slep-Tone Entertainment Corp. v. Shenanigans Lounge*,
    No. 612-cv-1236-TC, 2013 WL 1768444 (D. Or. Feb. 22, 2013)..................................7, 8

*Ying Chang v. Citimortgage, Inc.*,
    No. 12-cv-01884, 2013 WL 5939985 (D. Or. Nov. 2, 2013) ..........................................21

## STATE APPELLATE COURT CASES:

*Felonenko v. Siomka*,
    637 P.2d 1338 (Or. Ct. App. 1981)..................................................................................18

*Gregory v. Novak,*
    855 P.2d 1142 (Or. Ct. App. 1993)...................................................................18

*Slover v. Or. State Bd. of Clinical Soc. Workers,*
    927 P.2d 1098 (Or. App. Ct. 1996)...............................................................21

**MISCELLANEOUS**

15 U.S.C. § 1983e ...........................................................................................22, 23

Or. Rev. Stat. §§ 646 *et seq* ..........................................................................19, 20

# INTRODUCTION

This action challenges Defendants Yavone LLC's ("Yavone"), Healthy Choice Labs, LLC's ("HCL"), and Global Pro System, Inc.'s ("GPS") (collectively, "Defendants") deceptive marketing and sale of the weight-loss nutraceutical supplement "Simply Garcinia Cambogia." In an attempt to increase exposure of and revenue from the product, Defendants have banded together to promote and sell supposedly "free trials" of Simply Garcinia Cambogia through targeted online advertisements, where consumers are led to believe that they can try one bottle of the product for *only* the cost of shipping and handling. The reality, however, is that once consumers provide Defendants with their payment information (to pay for what Defendants represent is just shipping and handling costs), Defendants unilaterally enroll them in a monthly membership club and levy substantial recurring charges against them without any disclosure or authorization. As a result, Defendants have deceived thousands of consumers to the tune of potentially millions of dollars.

Defendants HCL and GPS now seek dismissal of each of Plaintiff Kassie Merritt's ("Merritt" or "Plaintiff") claims. Despite filing separate motions, HCL and GPS launch nearly identical attacks on the Complaint. In particular, they argue (i) that Merritt's claims fail to meet Rule 8(a) and Rule 9(b) pleading requirements, and (ii) that for one reason or another, she has failed to properly plead her claims for fraud in the inducement, fraud by omission, violations of Or. Rev. Stat. § 646 *et seq.* (Oregon Unlawful Trade Practice Act), breach of contract, and violations of 15 U.S.C. § 1693e (Electronic Funds Transfer Act). Each of these arguments fails.

First and contrary to the thin assertions found in each motion to dismiss, Merritt sufficiently differentiates between each Defendant's role in the alleged fraud so as to satisfy Rule 8(a), and further alleges the who, what, when, where and how of Defendants' fraudulent scheme

in satisfaction of Rule 9(b)'s heightened pleading requirements. Given that a vast majority of the information relevant to Plaintiff's claims—including the exact contours of each Defendant's role in the fraud—is uniquely within Defendants' possession and control, Plaintiff's allegations more than suffice at this early stage of the litigation.

In addition, HCL's and GPS's reliance on the supposed "Terms and Conditions Agreement" is misplaced inasmuch as that Agreement is outside of the pleadings—Merritt does not allege that she ever even saw the Terms and Conditions, let alone agreed to them—and thus cannot be considered by the Court on a motion to dismiss. Notwithstanding, the Terms and Conditions do not negate any of Merritt's claims—indeed, the quote upon which nearly all of Defendants' arguments are based *is not actually found within the agreement at all.*

Beyond that, Merritt sufficiently alleges each of the asserted causes of action. First, she alleges each element of her fraud in the inducement claim, including the specific representations Defendants made and that she relied upon, why the representations were false, Defendants' knowledge of their falsity, and the resulting injury she and the class suffered.

Merritt likewise sufficiently pleads her claim for fraud by omission. She alleges that by making any representations about the product Defendants imposed upon themselves an obligation to be entirely truthful and forthcoming with respect to what they were selling. In other words, Defendants were not permitted to stop at the "half truth" regarding the existence of a shipping and handling fee, but instead, were required to also disclose the negative-option nature of the product and all associated fees.

Merritt also successfully pleads her claim for violation of the Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646 *et seq.* By alleging each Defendant's role in the conduct and their willful deception of consumers, the Complaint sets forth Plaintiff's and the class's ascertainable

loss (in the form of the undisclosed fees collected from them), identifies the provision of the statute under which Plaintiff has sued (Compl. ¶ 61(a)), and explains why the representations Defendants made here were "false or misleading."

Next, Merritt adequately alleges Defendants' breach of contract. She establishes the contract (i.e., Defendants agreed to sell and Plaintiff and the class agreed to purchase the nutraceutical products), her full performance upon paying the initial shipping and handling fee, and the damage caused as a result of Defendants automatically enrolling her and others in (and charging them for) the program without their knowledge or consent.

Finally, Plaintiff sufficiently pleads a claim for violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e. She specifies that she never knew she would be automatically enrolled in the program, never agreed to the attendant monthly charges, and has never received a copy of such automatic enrollment (because, of course, it does not exist). Nothing more need be pleaded in this regard.

For all of these reasons and as explained further below, Defendants' motions to dismiss should be denied in their entirety.

## FACTUAL BACKGROUND

I.     **Defendants Mislead Consumers—Through Targeted Online Advertisements—Into Providing Their Payment Information to Pay for the Shipping of a Supposedly "Free Trial" and then Automatically Enroll Consumers in Membership Programs with Recurring Monthly Fees.**

Through their targeted online advertisements, affiliate websites, and misleading representations, Yavone, HCL, and GPS work hand-in-hand in a multi-level marketing scheme to sell a nutraceutical supplement under the name "Simply Garcinia Cambogia." (Plaintiff's Class Action Complaint ("Compl.") ¶¶ 12-14.) Once consumers are directed to one of Defendants' websites, they are greeted with statements designed to convince them to sign up for

a free-trial bottle, like "HELPS STOP FAT FROM BEING MADE," "SUPPRESSES YOUR APPETITE," and "Burn[s] Fat Quicker and More Efficiently," as well as "CLAIM YOUR FREE BOTTLE TODAY!" and "RUSH MY ORDER." (*Id.* ¶¶ 21-22, 24.) Nowhere do these websites contain pricing information or a request that the consumer review or agree to any terms and conditions. (*Id.* ¶ 24.) Instead, once consumers provide a name, address, phone number, and email address to claim the free bottle, they are directed to a checkout page that contains representations like "Final Step" and "Rush My Order" where the *only* representations on the page are that individuals will be charged less than $5.00 for shipping and handling. (*Id.* ¶ 25.) Directly below the "payment information" form, consumers have the option of clicking the large "RUSH MY ORDER" button, which completes the entire transaction without the need to scroll or view any other part of the page. (*Id.* ¶ 26.) In this way, the Defendants intentionally designed the product checkout page in a way to discourage any consumer from seeing or reading a price disclosure. (*Id.* ¶¶ 28-29.)

Though their roles are different, Yavone, HCL, and GPS are all necessary players in the fraudulent scheme. (*Id.* ¶ 33.) First, HCL markets and sells products on various websites that purportedly help consumers lose weight, including garcinia cambogia pills. (*Id.* ¶¶ 34-35.) Some of HCL's websites include "healthychoicelabs.com," "feelgoodweight.com," "clickslim.com," and "simplycambogia.com." (*Id.* ¶ 35.) Once a consumer navigates to one of HCL's webpages and submits their name and address, the consumer is automatically and uniformly navigated to www.protectedacquisitions.com, another website controlled by HCL. (*Id.* ¶ 37.) That is, no matter what initial website—operated by HCL with the help of GPS and Yavone—the consumer first visits, Defendants make all consumers complete their transactions on the protectedacquisitions.com website. (*Id.*) Defendant Yavone is the "merchant" in the scheme.  It

provides the domain for the collective endeavor's use, as well as enters into contracts with affiliates and other agents to market the web address online and draw consumers to the webpage. (*Id.* ¶ 36.) For its part, GPS recruits and coordinates the efforts of the merchants (like Yavone) operating in this scheme. (*Id.* ¶ 40.) In sum, each individual Defendant plays a different—yet necessary—role in this "free trial" scheme, and each receives a direct profit as a result.  (*Id.* ¶ 41.)

## II.    Plaintiff Merritt Relied Upon Defendants' Misrepresentations in Signing up for a "Free Trial" of Simply Garcinia Cambogia.

In or around early May 2014, Plaintiff Merritt encountered an advertisement for Defendants' Simply Garcinia Cambogia product while browsing the Internet. (Compl. ¶ 42.) She clicked on the advertisement and viewed representations concerning the product, its effectiveness, its availability, and its cost. (*Id.*) Relying on those representations, Merritt submitted her personal information through Defendants' initial landing page. (*Id.*) Thereafter, Defendants directed Merritt to their checkout page, where she viewed representations substantially similar to those described above, including a "price" box that listed $0.00 for the "free trial" of Simply Garcinia Cambogia and a charge of less than $5.00 for shipping and handling. (*Id.* ¶ 43.) No other price terms were on the webpage, and Merritt did not otherwise agree to any terms and conditions. (*Id.*) Based on the representations made by Yavone, HCL, and GPS on the website regarding the nominal price for shipping and handling (i.e., less than $5.00), Merritt submitted her debit card information and completed her order. (*Id.* ¶ 44.) Less than one month later, on May 26, 2014, Defendants debited Merritt's bank account in the amount of $79.99. (*Id.* ¶ 45.) Had Merritt known that she was going to be automatically charged $79.99, she would not have submitted her debit card information to pay for shipping and handling for Defendants' Simply Garcinia Cambogia product. (*Id.* ¶ 47.)

## ARGUMENT

### I.  Legal Standard.

On a Rule 12(b)(6) motion to dismiss, courts must view all facts in a complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Keams v. Tempe Technical Institute, Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). To fulfill the requirements of Rule 8(a), detailed factual allegations are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "[t]o survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 1941 (citing *Twombly*, 550 U.S. at 570). Under Rule 9(b), allegations of fraud must satisfy a heightened pleading requirement, *Holmes v. Bartlett*, No. 03-1176-AS, 2004 WL 1379590, *4 (D. Or. Feb. 20, 2004), namely "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted).

As explained below, each claim set forth by Merritt's Complaint easily meets—and even exceeds—federal pleading requirements.

### II.  Merritt Pleads Sufficient Facts as Required by Rules 8(a) and 9(b), Putting all Defendants—Including GPS and HCL—on Notice of the Claims Brought Against Them.

Without asserting any attempt at a substantive argument against Merritt's Complaint, GPS and HCL try to escape all liability by arguing that her allegations fail to allege direct liability against each Defendant. (*See, e.g.,* GPS's Motion to Dismiss ("GPS Mot.") at 2 (the "lawsuit . . . has nothing to do with GPS"); HCL's Motion to Dismiss ("HCL Mot.") at 2 ("Plaintiff improperly 'group pleads' and lumps all three Defendants together").) Those arguments lack merit.

A.    Merritt Pleads Sufficient Facts Under Rule 8(a).

For its part, GPS argues—rather tepidly—that Merritt's claims "fail[] to allege direct liability against GPS" because the allegations do not distinguish between defendants.[1] (GPS Mot. at 9.) Essentially, GPS argues that none of the allegations apply to GPS because it was the *other* two named Defendants (HCL and Yavone), *not* GPS, who were involved in the underlying misconduct that forms the bases of Merritt's claims. (*Id.* at 6-9.) HCL, despite being the recipient of GPS's finger-pointing, also tries to argue that Merritt's claims fail to meet the relevant pleading standards and thus do not sufficiently put HCL on notice of the claims against it. (HCL Mot. at 2, 5-10.) Neither argument passes muster.

The pleading requirements under Rule 8(a) require "only a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (internal quotations omitted). The purpose of this requirement is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Slep-Tone Entertainment Corp. v. Shenanigans Lounge*, No. 12-cv-1236-TC, 2013 WL 1768444, at *2 (D. Or. Feb. 22, 2013) (quoting *Twombly*, 550 U.S. at 555). When a party cannot possibly know each individual defendant's role in the unlawful conduct at the pleading stage, courts find that a determination of the roles of each defendant "is an issue to be vetted in discovery." *Id.* at *2. As a result, courts regularly deny motions to dismiss based on a plaintiff's inability to differentiate defendants at the pleadings stage, and find that as long as the complaint "identifies the defendants, their places of

---

[1]    GPS's argument that it cannot be held liable because Plaintiff did not allege a separate cause of action for alter ego liability (GPS Mot. at 9-10.) is a red herring, as Merritt alleges direct liability against GPS in each count of the Complaint. (*See* Compl. ¶ 1 n.1 ("[W]hen facts are alleged against one Defendant, Plaintiff alleges the same facts against all other Defendants unless specified otherwise.").) While Merritt recognizes that "alter ego" can convey a legal term of art, she used the term to describe the significant connection between the Defendants (*see* footnotes 1 and 6 of the Complaint), not to assert a separate count of indirect alter ego liability against GPS.

business, plaintiff's investigators' observations, and the specific allegations against each individual defendant," Rule 8(a)'s pleading requirements are satisfied. *Id.* (denying motion to dismiss that argued "the complaint should differentiate between defendant institutions that provide in-house karaoke entertainment services and those that hire a karaoke jockey . . . as an independent contractor" when the plaintiff had no way of knowing the companies' exact interplay without the benefit of discovery).[2]

Here, Merritt's Complaint does exactly that. In addition to clearly stating that each fact is alleged against all Defendants unless specified otherwise (Compl. ¶ 1 n.1), the Complaint spends an entire section identifying the roles—to the best of Merritt's knowledge at this early stage of the litigation—that each Defendant plays in the alleged fraud. (*See id.* ¶¶ 33-41.) Just like the complaint in *Slep-Tone*, Merritt's Complaint separately identifies the Defendants and their individual places of business (*id.* ¶¶ 6-8), delineates their roles based on the limited information available through a pre-discovery investigation (*id.* ¶¶ 33-41), and asserts specific factual allegations related to each Defendant's role. (*See id.* ¶¶ 1 n.1); *see also Slep-Tone*, 2013 WL 1768444, at *2 (holding that allegations such as these are sufficiently detailed under Rule 8(a)). Therefore, under Rule 8(a), Merritt pleads "sufficient facts particularized to each defendant such that defendants are given fair notice of the allegations against them." *See id.*

B.    Merritt's Complaint Also Meets—and Exceeds—the Heightened Pleading Requirements Under Rule 9(b).

In addition to alleging sufficient facts under Rule 8(a)—and contrary to the assertions of HCL and GPS—Plaintiff also adequately pleads her claims for fraud under Rule 9(b), which

---

[2]    Going one step further, Plaintiff's allegations related to the Defendants' roles in the scheme also satisfy Rule 9(b)'s heightened pleading standard. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) (finding that plaintiffs may "make the *same* allegations against *all* [d]efendants" if they do so "by conscious choice and with specific purpose.").

requires that plaintiffs identify the "who, what, when, where, and how" of the alleged fraud.
(GPS Mot. at 7; HCL Mot. at 6.) And in cases like this, where the intricacies of each defendant's
role in the fraudulent scheme can only be determined through discovery, the standard merely
requires plaintiffs to identify, but not describe in exacting detail, "the role of each defendant in
the alleged fraudulent scheme." *Fields v. Wise Media, LLC*, No. C 12-05160, 2013 WL 3187414,
at *4 (N.D. Cal. June 21, 2013) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir.
2007)) (finding that plaintiffs met Rule 9(b) pleading requirements when the complaint described
generally each defendant's role in the alleged fraudulent scheme). Indeed, Merritt provides
sufficiently detailed allegations to meet—and exceed—the pleading standard under the
circumstances of this case.

Merritt alleges *when* she "encountered an advertisement for Defendants' Simply Garcinia
Cambogia product"—in May 2014. (Compl. ¶ 42.) Merritt also alleges *what* representations she
saw on which website. (*See id.* ¶¶ 21-32, 42.) Specifically, she alleges that she "clicked on the
advertisement and viewed representations substantially similar to those described [] concerning
the efficacy, availability, and cost of Simply Garcinia Cambogia" *(id.* ¶ 42)—i.e., that the
product "HELPS STOP FAT FROM BEING MADE," "SUPPRESSES YOUR APPETITE," and
"Burn[s] Fat Quicker and More Efficiently"; that consumers would receive a "free trial" or
"FREE BOTTLE"; that the offer was "Risk Free"; and that the total cost was "0.00" with a small
charge for shipping and handling. (*Id*. ¶¶ 22, 24-25, 43.) Merritt also specifies *where* she saw the
representations—as online advertisements when browsing the World Wide Web. (*Id.* ¶ 42.) She
also sufficiently alleges *who* made the representations by pointing to a number of websites that
are operated by Defendant HCL in collaboration with Defendants Yavone and GPS and that

employ the same marketing scheme to sell Simply Garcinia Cambogia.[3] (*Id.* ¶ 35.) Merritt finally alleges that she submitted her payment information in reliance on the representations that she would only be charged less than $5.00 for shipping and handling. (*Id.* ¶¶ 43-44.)

Thus, Merritt explicitly alleges that in May 2014 (*when*) all three Defendants (*who*)—including GPS and HCL—made false representations regarding the cost of the "free trial" of Simply Garcinia Cambogia (*what*) in online advertisements on various named websites (*where*). She also alleges that those representations were false inasmuch as the "free trial" was designed to gather her payment information in order to process automatic and recurring charges to which she never agreed (*how*). (Compl. ¶ 44-47.) These allegations easily satisfy Rule 9(b)'s heightened pleading requirement. *See Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 749 F. Supp. 1042, 1047 (D. Or. 1990) (finding that the plaintiff pleaded its fraud claims sufficiently to satisfy Rule 9(b) where it identified the specific statements made, the date on which those statements were made, and to the extent possible, the role of each defendant in the misrepresentations).

Merritt also goes even further to provide detailed allegations as to *how* consumers are tricked into signing up for a "free trial" of Simply Garcinia Cambogia. (Compl. ¶¶ 21-32.) She explains that once consumers are directed to one of Defendants' websites, they are greeted with statements designed to convince them to sign up for a free-trial bottle, like "HELPS STOP FAT FROM BEING MADE," "SUPPRESSES YOUR APPETITE," and "Burn[s] Fat Quicker and

---

[3]     The Complaint names the following of Defendants' websites used in this scheme: healthychoicelabs.com, feelgoodweight.com, clickslim.com, simplycambogia.com, cahealthyweightloss.com, datgarciniacambogia.com, health4u3.com, bachelorweightloss.com, cchealthgarciniacambogia.com, goodnutrients4all.com, greencoffeeweightlossnow.com, mycambogiaweightloss.com, simplycambogia.com, vitaminmind.com, livewellchoice.com, shrinkinsize.com, lifetimeofgoodhealth.com, lositlikemagic.com, newageweightloss.com, readytoburnfat.com, embweightloss.com, and bhealthynwell.com. (Compl. ¶ 35 n. 7.)

More Efficiently," as well as "CLAIM YOUR FREE BOTTLE TODAY!" and "RUSH MY ORDER." (*Id.* ¶¶ 21-22, 24.) She further explains that the websites did not contain pricing information for future automatic charges or a request that the consumer review or agree to any terms and conditions. (*Id.* ¶ 24.) Instead, once consumers provided their name, address, phone number, and email address to claim their free bottle, they were directed to a checkout page that contained representations like "Final Step" and "Rush My Order" where Defendants represented that the price of the bottle was $0.00 with a charge of less than $5.00 for shipping and handling. (*Id.* ¶ 25.) Directly below the "payment information" form, consumers had the option of clicking the large "RUSH MY ORDER" button, which completed the entire transaction without the need to scroll down or view any other part of the page. (*Id.* ¶ 26.) The Complaint also specifies that the Defendants intentionally designed the product checkout page in a way to discourage any consumer from seeing or reading a price disclosure. (*Id.* ¶¶ 28-29.) And Merritt alleges that the various representations made on these websites, combined with the intentional concealment of a price disclosure, induced consumers to submit their payment information believing they would only be charged a nominal amount for shipping and handling. (*Id.* ¶ 29.)

With these factually specific details, it is hard to imagine what more could be required of Merritt when it comes to pleading her fraud claims. Nevertheless, Defendants still argue that she has not pleaded enough, using their fall-back argument that she has not identified each Defendant's role in the alleged scheme. That argument fails in this context too. In certain cases involving fraud, Rule 9(b)'s particularity requirements "may be relaxed as to matters within the [plaintiff's] knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) thus only requires that a plaintiff "specifically plead those facts surrounding alleged acts of fraud *to which they can reasonably be expected to have access*." *Concha v.*

*London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (emphasis added). For example, when alleging corporate fraud, "plaintiffs will not have personal knowledge of all the underlying facts" which makes it "difficult to attribute particular fraudulent conduct to each defendant as an individual." *Id.* In such cases, knowledge of specific factual information is solely within the corporation's control and remains "inaccessible to the [plaintiff] until discovery has been completed." *Altamont Summit Apartments, LLC v. Wolff Properties, LLC*, No. Civ. 01-1260, 2002 WL 926264, at *5 (D. Or. Feb. 13, 2002). The Ninth Circuit further relaxes the particularity requirement "for claims against a corporation where the alleged misstatements are attributed to a group," stating that a plaintiff need only identify the roles of the individual defendants "where possible." *Holmes*, 2004 WL 1379590, at *4.

Here, Merritt has alleged as many facts as possible at this early stage of the case to describe each Defendant's role in the joint marketing scheme to deceive consumers (like herself) into signing up for the "free trial" of Simply Garcinia Cambogia. (Compl. ¶¶ 33-41.) For example, Merritt alleges that HCL "operates dozens of websites on the internet that have been designed (with assistance from Defendants Yavone and GPS) to sell Defendants' Simply Garcinia Cambogia brand of garcinia cambogia extract," and goes so far as to identify more than twenty of them. (*Id.* ¶ 35.) Merritt then goes on to describe Yavone's role as "merchant" in supplying the website domains and contracting with marketing affiliates to draw consumers to these websites, (*id.* ¶¶ 36-37), and explains how GPS "recruits and coordinates the efforts of the merchants operating in this [multi-level marketing] scheme" by tapping into the "downline" of its principal, Anthony Powell. (*Id.* ¶ 40.) As a result, the Complaint sufficiently explores the roles each Defendant played in deceiving consumers through their sale of Simply Garcinia Cambogia, and Rule 9(b) is satisfied. *See Fields*, 2013 WL 3187414, at *4 ("Plaintiffs should not

be punished because multiple actors plausibly engaged in the exact same behavior as part of the broader alleged scheme" because "the relevant facts remain in the aggregator [defendants'] exclusive knowledge and are therefore not subject to the same rigors of the rule." *Id.* (holding that, instead, specific allegations are an issue to be vetted with "appropriate discovery").

## III.    Merritt Alleges Facts Sufficient to State a Claim for Each Count of the Complaint.

Unable to hide behind their pleading requirements defenses, HCL and GPS have little ammunition with which to attack Merritt's Complaint. Nonetheless, both seek to dismiss each of Merritt's claims for several other reasons. As described below, each of those additional arguments fails as well.

### A.    As an Initial Matter, the Court May Not Properly Consider the Document HCL Attached to its Motion.

In their respective motions, both HCL and GPS rely heavily on Exhibit 1 to HCL's motion to dismiss, which purports to be the "Terms and Conditions Agreement" that Merritt supposedly agreed to when she signed up for the free trial of Simply Garcinia Cambogia. (*See* GPS Mot. at 8; HCL Mot. at 2, 3, 7, 10, and 11.) While GPS uses the document primarily in support of its arguments against Merritt's fraud by omission and breach of contract claims (*see* GPS Mot. at 8), HCL relies on the document for virtually all of its arguments in support of dismissal. (*See, e.g.*, HCL Mot. at 2 ("[T]he vast majority, if not all, of Plaintiff's allegations . . . are contradicted by the plain terms of the Agreement Plaintiff entered into with HCL").) This document should be disregarded for several reasons.

#### 1.    *The Document Cannot Be Incorporated by Reference.*

As an initial matter, the Court cannot consider the document because it was not attached to, or incorporated by the allegations in, Plaintiff's Complaint. Under the incorporation by reference doctrine, a court may only consider documents not physically attached to the pleadings

in deciding a motion to dismiss where the "complaint necessarily relies on extrinsic evidence." *RB Rubber Prods., Inc. v. ECORE Intern., Inc.*, No. 11-cv-319, 2012 WL 860416, at *4 (D. Or. Mar. 13, 2012) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). "Material is necessarily relied upon if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (internal quotations omitted). Here, not one of those factors is satisfied.

First, nothing in the language of the Complaint explicitly references the Terms and Conditions Agreement, and any arguments by GPS or HCL referencing the Terms and Conditions should be rejected on that basis alone. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (refusing to apply the incorporation by reference doctrine on a Rule 12(b)(6) motion to dismiss when the complaint did not "refer[] extensively to the document" and the document did not "form[] the basis of the plaintiff's claim"). Far from referring to it "extensively," Merritt's Complaint never once references the Terms and Conditions Agreement, and certainly never addresses its content. *See RB Rubber Prods.*, 2012 WL 860416, at *4 ("[T]o merit incorporation by reference, the complaint must refer to the content of the document and not merely its existence").

Similarly, Merritt does not use the Terms and Conditions Agreement as the basis of any of her claims. Rather, Merritt's claims hinge on the point of sale contract through which Merritt and Class members "entered into contracts with Defendants to receive a trial offer of their nutraceutical product." (Compl. ¶ 88.) Indeed, Merritt alleges that "[a] material inducement and term of the contracts was Defendants' representation that Plaintiff and the Class would only need to pay shipping and handling in order to receive the trial offer." (*Id.*); *see also Perdue v. Rodney Corp.*, No. 13cv2712, 2014 WL 3726700, at *5 (S.D. Cal. July 25, 2014) (declining to extend the

"incorporation by reference" doctrine to extrinsic invoices when the plaintiff—despite mentioning "invoices" in his complaint—neither alleged their contents nor relied on them as a basis for his claims). Because Merritt does not use the Terms and Conditions Agreement as a basis for her claims, the Terms and Conditions Agreement cannot be considered.

Finally, Merritt also contests the authenticity of the Terms and Conditions Agreement attached to HCL's motion to dismiss. Not only does the document lack a date to identify when it was available or whether it was available when Merritt first submitted her personal information to receive the nutraceutical, it also fails to identify where the Agreement could be found (i.e., it does not list a web address that could at least put the document into context). And perhaps most importantly, the document does not even *contain the language* that HCL relies upon. (*See* Section III.A.2, *infra*.) As such, there is simply no way for Merritt or the Court to accept or otherwise test the veracity of Defendants' factual contentions without the benefit of discovery and a sufficiently developed factual record. The authenticity of the document, along with its supposed use, is accordingly at-issue, and any consideration of it by this Court would be improper. *See Perdue*, 2014 WL 3726700, at *5 (refusing to consider extrinsic documents when the plaintiff "explicitly disputed the authenticity of the documents").

> 2.    *The Terms and Conditions Agreement does not even stand for the proposition on which Defendants base their arguments.*

Even if the Court did consider the Terms and Conditions Agreement (it should not), the document—astonishingly—does not even support the proposition for which HCL relies on it. Namely, HCL argues that the terms of the contract "expressly provided that HCL would charge Plaintiff fees above and beyond the price of shipping and handling." (HCL Mot. at 10.) HCL then provides the following "quotation" supposedly found within the attached document:

> By ordering this product, you agree to be enrolled in a monthly autoship program. Try out your free bottle for 12 days by paying the cost of shipping and handling. After the trial expires on day 12 we will charge you $79.95 USD for the initial product unless you cancel before the 12 day trial is over. You also agree that your credit card will be charged $79.95 USD 30 days from the initial purchase and then every 30 days thereafter for continued product supply until you cancel.

That language, however, *is nowhere to be found* in the Terms and Conditions provided by HCL. In fact, not a single semblance of similarity from the six-line block quotation relied on by HCL is present in the document. Therefore, the document is improperly attached, improperly relied upon, and flatly irrelevant, and the Court should therefore decline to consider it.

      B.      <u>Merritt Otherwise Sufficiently Alleges Her Fraud-Based Claims.</u>

In addition to satisfying the heightened pleading requirements of Rule 9(b), Merritt otherwise sufficiently pleads all of her fraud-based claims.

      *1.      Merritt sufficiently alleges her fraud in the inducement claim.*

First, Merritt sufficiently alleges that she was fraudulently induced to pay for Defendants' "free trial" of the Simply Garcinia Cambogia. To state a claim for fraud under Oregon law, a plaintiff must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's intent to rely thereon; and (9) the hearer's consequent and proximate injury." *Original Talk Radio Network, Inc. v. Alioto*, No. 13-cv-00759, 2013 WL 4084247, at *10 (D. Or. Aug. 13, 2013).

Plaintiff alleges just that. As explained in detail in Section II.B, *supra*, Plaintiff alleges that Defendants made representations that the cost of the "free trial" of Simply Garcinia Cambogia amounted to just shipping and handling. (Compl. ¶ 25.) Next, Plaintiff alleges that those statements were both false—because the cost of the "free trial" amounted to $79.99 per

month as a result of the negative option enrollment (*see id.* ¶¶ 45-47, 67-70.)—and material—as the "actual characteristics and price of the product…are material terms of any transaction." (*Id.* ¶ 66.) Next, Plaintiff alleges that Defendants knew the representations were false (*id.* ¶ 73), and that that they intended for Plaintiff and the class to rely on those representations (*id.* ¶ 74). Finally, because Defendants intentionally provide no representations regarding the automatic negative-option enrollment, Plaintiff and the class had no way of knowing that the "free trial" was anything but free (*see id.* ¶¶ 46, 72), relied on the misrepresentations to the contrary by providing their shipping and payment information (*id.* ¶ 75), and suffered harm in the form of automatic monthly charges as a result. (*Id.* ¶¶ 63, 77.) These allegations readily fulfill all the elements of a fraud claim. *See Original Talk Radio*, 2013 WL 4084247, at *11 (denying the defendant's motion to dismiss when plaintiff alleged each element of fraud with particularity).

### 2.    *Merritt sufficiently alleges her fraud by omission claim.*

Next, Plaintiff also sufficiently alleges her claim for fraud by omission. Defendants both argue to the contrary, but for different reasons. GPS once again puts forth its short and analytically deficient argument that "none of the allegations supporting the claim apply to GPS" (GPS Mot. at 7), and instead seems to shift the blame solely to HCL for failing to disclose the nature of the alleged misrepresentation. (*Id.* at 8.) HCL counters this argument with an equally groundless one—that (i) there was no special relationship obligating a duty to disclose, and (ii) Merritt's Complaint never alleged that "HCL omitted any material fact or told any half-truths." (HCL Mot. at 10.) All of these arguments fail.

In Oregon, "[f]ailure to disclose material facts amounts to a misrepresentation when the speaker (or . . . the writer) has made representations that would mislead without full disclosure." *Expedite, Inc. v. Plus, Bags, Cars & Serv., LLC*, No. 11-329, 2012 WL 3597427, at *5 (D. Or.

PLAINTIFF'S OPPOSITION                                                                         17
TO DEFENDANTS' MOTIONS TO DISMISS

Aug. 17, 2012) (citing *Felonenko v. Siomka*, 637 P.2d 1338, 1340-41 (Or. Ct. App. 1981)).

"There need not always be a duty to disclose for such an omission to be actionable . . . because

one who makes a representation that is misleading because it is in the nature of a 'half-truth'

assumes the obligation to make a full and fair disclosure of the whole truth." *Id.* (citing *Meade v.*

*Cedarapids, Inc.*, 164 F.3d 1218, 1222 (9th Cir. 1999); *Gregory v. Novak*, 855 P.2d 1142, 1144

(Or. Ct. App. 1993) (internal quotations omitted)).

Here, Defendants have voluntarily assumed the obligation "to make a full and fair

disclosure of the whole truth" by making less-than-true representations on their websites. *Id.*

Defendants assumed the duty to notify consumers of the actual price by representing that

individuals could receive a "free trial" of the Simply Garcinia Cambogia product (Compl. ¶¶ 15-

16, 24), for a total cost of "less than $5.00 for shipping and handling" *(id.* ¶¶ 25, 43), and by

providing Merritt and the class members a "price" box that listed $0.00 for Simply Garcinia

Cambogia (*id.* ¶ 25). *See Meade*, 164 F.3d at 1222 ("Under Oregon law, there is a duty to

disclose likely material contingencies").  Specifically, it was Defendants' duty to notify

consumers that the price for the free-trial bottle was not "free" or only a nominal shipping and

handling fee, but rather, that they would automatically enroll all consumers who requested a free

trial in a negative option contract that would charge them a monthly fee—in Plaintiff's case

$79.99. As Plaintiff explains in her Complaint, though, Defendants never did so. Not only did

they fail to provide a disclosure on their websites, but they intentionally designed the page to

prevent individuals from even looking for such a disclosure (not that there was one) by having a

large "RUSH MY ORDER" button to complete the transaction available immediately below the

payment information form, which could be accessed without consumers scrolling to or viewing

any other part of the page. (*Id.* ¶¶ 26, 28-29.)

In the end, there can be no question on these allegations that Defendants assumed an obligation to tell the whole truth about the "free trial." Accordingly, Plaintiff's claim for fraud by omission must survive.

> 3.      *Merritt sufficiently alleges her claim for violation of Or. Rev. Stat. § 646 et seq.*

Defendants next argue that Plaintiff failed to allege her claim for violation of the Oregon Unlawful Trade Practices Act ("UTPA"). Unable to garner any substantive argument, GPS rehashes its baseless argument that none of Merritt's allegations apply to it because she "did not purchase Simply Garcinia Cambogia from GPS." (GPS Mot. at 6.) For its part, HCL attacks Merritt's UTPA claim by simply rehashing its Rule 9(b) and Terms and Conditions Agreement arguments and arguing that Merritt did not sufficiently allege that HCL's conduct was "willful" as required to support a violation. (HCL Mot. at 7-8.) Both Defendants' arguments are misguided.

Setting aside the fact that here, as with each of her other claims, (i) Merritt adequately alleged her fraud-based claims under Rule 9(b) and (ii) the Terms and Conditions Agreement cannot be incorporated, Plaintiff easily establishes a claim for violation of the UTPA. To state a claim under the UTPA, a plaintiff must establish that she suffered "an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608." Or. Rev. Stat. § 646.638(1). Here, Plaintiff alleges that "Defendants made false or misleading representations of fact concerning the offered price of Simply Garcinia Cambogia by omitting the actual price of the

Simply Garcinia Cambogia in violation of Or. Rev. Stat. § 646.60[8](s)." (Compl. ¶ 61(a).)[4] She

further alleges that she lost money as a result—in the form of a $79.99 payment that she never

even saw, let alone agreed to. Accordingly, Plaintiff's claims should survive.

Beyond that, Merritt sufficiently demonstrates that HCL acted "willfully" in violation of

the UTPA. (HCL Mot. at 7.) "A willful violation occurs when the person committing the

violation knew or should have known that the conduct of the person was a violation." Or. Rev.

Stat. § 646.605(10). But "[a]t the pleading stage, a plaintiff need not allege willfulness with

specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (citing Fed. R.

Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally").) Here, she alleges that each Defendant, including HCL, acted "knowingly" and

"purposely" in deceiving Plaintiff and the putative class (Compl. ¶ 60), and that "[a]t all relevant

times, Defendants acted knowingly or in reckless disregard of the requirements of Or. Rev. Stat.

§ 646 *et seq.*" (*Id.* ¶ 62.) Additionally, Merritt alleges that "Defendants knew the true terms of

the agreement and the existence of the automatic renewal charges at the time they entered into

transactions with Plaintiff." (*Id.*) These allegations readily state a claim for a knowing violation

of the UTPA. *See Blincoe v. Western States Chiropractic College*, No. CV 06-998, 2007 WL

2071916, at *5 (D. Or. July 14, 2007) (finding a general allegation that the defendant's conduct

was "willful" sufficiently particular when alleging fraud); *see also McKie v. Sears Protection

Co.*, No. CV 10-1531, 2011 WL 1587112, at *9 (D. Or. Feb. 22, 2011) (holding that plaintiff

properly pleaded willfulness under the UTPA when the factual allegations in the complaint

"plausibly raise[d] the inference that [defendant] willfully misrepresented [their agreement]").

---

[4]    Here, Plaintiff regretfully made a typographical error, originally transcribing the statute
as "§ 646.605(s))." Additionally, HCL is correct in stating that Plaintiff's allegations under ¶
61(c) meant to cite § 646.295A rather than § 646.295.

### C.    Merritt Sufficiently Alleges her Breach of Contract Claim.

Next, Plaintiff sufficiently pleads her claim for breach of contract. To state a claim for breach of contract under Oregon law, a plaintiff must allege "the existence of a contract, its relevant terms, [the] full performance and lack of breach and defendant's breach resulting in damage to [them]." *See Ying Chang v. Citimortgage, Inc.*, No. 12-cv-01884, 2013 WL 5939985, at *12 (D. Or. Nov. 2, 2013) (quoting *Slover v. Or. State. Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. App. Ct. 1996) (finding that a plaintiff sufficiently pled breach of contract when those elements have been alleged).

Here, Merritt alleges the existence of a valid contract whereby Defendants agreed to provide and she agreed to receive a free trial offer of Simply Garcinia Cambogia in exchange for the price of shipping and handling (the "contract"). (*See* Compl. ¶ 88.) She also alleges that the contract involved Defendants' agreement to only charge her the cost of shipping and handling in order to receive the trial offer ("terms") (*id.*), which she paid, fully performing her contractual obligations ("performance"). (*Id.* ¶ 92.) Finally, Merritt alleges that Defendants failed to uphold their end of the bargain by charging additional fees without permission ("breach") (*id.* ¶ 89-90), causing injury in the amount of the $79.99 she unwillingly paid ("damages"). (*Id.* ¶ 93.) Merritt thus adequately pleads the elements of her breach of contract claim.[5]

---

[5]    Nevertheless, GPS and HCL rehash their tried (but not true) arguments that GPS was not a party to the contract and/or that the Terms and Conditions Agreement controls. (*See* GPS Mot. at 8; HCL Mot. at 10-11.) Again, those arguments fail. First, the Complaint alleges the existence of a valid contract between Merritt and each Defendant. And to the extent that either GPS or HCL relies on the Terms and Conditions Agreement document attached to HCL's motion—and they both rely on it heavily—any argument to that effect should be disregarded, as discussed in Section III.A.

**D.    Merritt Sufficiently Alleges Her Electronic Funds Transfer Act Claim.**

Finally, GPS and HCL attack Merritt's Electronic Funds Transfer Act, 15 U.S.C. § 1693e ("EFTA"), claim. GPS's only argument, not surprisingly, again points the finger at HCL and claims that the violations of the EFTA are directed only at HCL and therefore do not apply to GPS. (GPS Mot. at 9.) Plaintiff's response to this argument has already been discussed at length—*supra*, Section II.A—so it suffices to say that Merritt's allegations apply equally to GPS as well. HCL, on the other hand, once again improperly relies on the Terms and Conditions Agreement for the premise that it disclosed the alleged charges and then argues in the alternative that the EFTA does not apply in this case anyway. (HCL Mot. at 11-12.)

As an initial matter, HCL's argument that Merritt consented to additional charges in the Terms and Conditions Agreement is unfounded. (*See* Section III.A, *supra*.) But even if HCL could rely on the exhibit (it cannot), the "agreement" does not disclose any semblance of the nature of the "free trial" and any subsequent charges. (*Id.*)

Next, Section 1693e does indeed apply here. A plaintiff may plead a claim for violation of Section 1693e if the "transfers were 'unauthorized'" or if the defendant fails to "provide her with a copy of the purported authorization to deduct funds from her bank account." *In re EasySaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1182 (S.D. Cal. 2010) (citing 15 U.S.C. § 1983e(a)). The *EasySaver* case is particularly instructive on both points. There, a plaintiff unknowingly signed up for a rewards program that charged associated fees when purchasing flowers online and later discovered "unauthorized billing to her debit card" by the defendant. *Id.* The defendant moved to dismiss the plaintiff's EFTA claim, arguing that she "agreed" to the "charges by entering her email address and zip code and clicking the green acceptance button." *Id.* at 1183. The court denied the defendant's motion to dismiss for two reasons. First, the court

found that the plaintiff adequately pled an EFTA violation because, accepting her allegations as true, the "electronic fund transfers were 'unauthorized' within the meaning of the statute," as she was not aware that they would be incurred. *Id.* The court also found that the plaintiff's claim "survive[d] for a separate reason," namely that the defendant "did not provide her with a copy of the purported authorization to deduct funds from her bank account" in violation of § 1693e(a). *Id.*; *see also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1093-94 (N.D. Cal. 2006) (holding that, with an amendment specifying the specific statutory provision, plaintiff had stated an EFTA claim against defendant rewards program).

The facts are no different here. Indeed, like the plaintiff in *In re Easysaver*, Merritt never knew that she would be automatically enrolled in a membership program or that she would be charged recurring monthly fees as a result. (Compl. ¶ 13 ("Defendants deceptively enroll [them] in a monthly subscription so that Defendants can impose recurring and sometimes endless monthly charges onto their credit cards or bank statements."); ¶ 96 (Defendants "initiated the electronic transfers of funds for unauthorized charges from the debit accounts of Plaintiff and the EFTA Subclass without first obtaining written authorization from them or providing them with a copy of any such purported authorization.").) Additionally, Defendants never once provided Merritt "with a copy of the purported authorization to deduct funds from her…account"—likely because it does not exist. *See In re Easysaver*, 737 F. Supp. 2d at 1183; *see also* 15 U.S.C. § 1693e(a) ("A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."). As a result, Plaintiff sufficiently alleges that Defendants violated the EFTA on two separate fronts, and her claims must stand.

## CONCLUSION

For the foregoing reasons, Plaintiff Kassie Merritt respectfully requests that the Court enter an Order (i) denying both GPS's and HCL's motions to dismiss in their entirety, (ii) requiring GPS and HCL to answer her Complaint, and (iii) awarding such other and further relief as the Court deems reasonable and just.[6]

*        *        *

**KASSIE MERRITT**, individually and on behalf of all others similarly situated,

Dated: August 3, 2015

By: /s/ Courtney C. Booth
     One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Courtney C. Booth
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[6]     In the event that the Court grants either motion to dismiss (partially or otherwise), Merritt respectfully requests that the Court grant her leave to add further detail, additional claims, or otherwise take the necessary steps to cure any defects found by the Court in her pleadings. *See, e.g., Moore*, 885 F.2d at 538 (holding that courts "should grant leave to amend freely when justice so requires" (internal quotation omitted)).

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Plaintiff's Opposition to Defendants Global

Pro System, Inc.'s and Healthy Choice Labs, LLC's Motions to Dismiss on:

| | |
|---|---|
| **Joshua M. Sasaki, P.C.**, OSB No. 964182 | **Brian R. Booker** |
| josh.sasaki@millernash.com | brian.booker@quarles.com |
| **Jonathan H. Singer**, OSB No. 105048 | **Kevin D. Quigley** |
| jonathan.singer@millernash.com | kevin.quigley@quarles.com |
| MILLER NASH GRAHAM & DUNN LLP | Quarles & Brady LLP |
| 3400 U.S. Bancorp Tower | One Renaissance Square |
| 111 S.W. Fifth Avenue | Two North Central Avenue |
| Portland, Oregon  97204 | Phoenix, Arizona 85004 |
| Telephone:  503.224.5858 | Telephone:  602.229.5200 |
| Facsimile:  503.224.0155 | Facsimile:  602.229.5960 |
| *Attorneys for Defendants Global Pro System, Inc. and Healthy Choice Labs, LLC* | *Attorneys for Defendants Global Pro System, Inc. and Healthy Choice Labs, LLC* |

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 3rd day of August, 2015.

*/s/ Courtney C. Booth*
_____
Courtney C. Booth
*Attorney for Plaintiff, KASSIE MERRITT,
individually and on behalf of all others similarly
situated*